## MILLIE IRON MINING CO. v. McKINNEY.

(Circuit Court of Appeals, Sixth Circuit. January 9, 1911.)

No. 2,057.

1. SALES (§§ 77, 88*)—CONTRACT—ACTION FOR BREACH.

Plaintiff contracted to sell a quantity of iron ore lying at a dock, for which defendant agreed to pay a stated sum, to ship the ore to Lake Erie ports as soon as convenient and profitable, and to pay such further amount as might be received therefor after deducting certain expenses and commissions. Defendant contracted for a resale of the ore five days later, which was before the season for navigation opened on the Great Lakes. Held, in an action for breach of the contract, in which there was evidence tending to show that defendant sold the ore at too low a price, and that it would have brought more in the market after the season opened, that the contract did not give defendant unlimited discretion as to the sale of the ore, and that whether he violated it in not shipping the ore was a question for the jury.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 208–212, 248–250; Dec. Dig. §§ 77, 88.*]

2. SALES (§ 88*)—CONTRACT—ACTION FOR BREACH.

It was also a question for the jury whether defendant performed his duty under the contract in good faith, where there was evidence that, at the same time he sold the ore, he sold other ore for a company of which he was an officer at a higher price, and tending to show that the low price on the ore of the contract was made to effect the other sale.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 248–250; Dec. Dig. § 88.*]

In Error to the Circuit Court of the United States for the Northern District of Ohio.

Action at law by the Millie Iron Mining Company against Price McKinney. Judgment for defendant, and plaintiff brings error. Reversed.

A. C. Dustin, for plaintiff in error.

S. H. Holding, for defendant in error.

Before SEVERENS, WARRINGTON, and KNAPPEN Circuit Judges.

SEVERENS, Circuit Judge. In this action the plaintiff in error, who was plaintiff below, sought to recover damages from the defendant for breach of a contract which it had with him relative to the shipment and disposition of a quantity of iron ore which it had at its mines at Iron Mountain in the Upper Peninsula of Michigan.

The contract, which consisted of two parts, was made at Iron Mountain on March 2, 1894. The first instrument was a bill of sale from the Mining Company to McKinney of 14,000 tons, more or less, of iron ore then on its docks at that place for the consideration of $14,-500, with a covenant of warranty of title and with certain incidental stipulations extending conveniences to McKinney for taking and shipping the ore from the company's docks. The other instrument, which

was made on the same day, and evidently intended to be a part of the entire transaction, was as follows:

"Iron Mountain, Michigan, March 2, 1894.

"Millie Iron Mining Co., Iron Mountain, Mich.

"The consideration for the iron ore this day purchased by me from you and now piled on your stock docks at Iron Mountain. Mich., is the sum of fourteen thousand five hundred dollars, at all events, and such additional sum (if any) to be determined in the manner following: I will ship the ore to Lake Erie ports as soon as it is convenient and profitable to do so and there dispose of the same in usual course of the iron ore business. If the gross receipts on sale of the ore exceed the sum of $14,500 added to the cost of loading the ore at the mine, the railroad and lake freights thereon from the mine to destination at Lake Erie, the insurance, seller's commission at ten cents per ton, and interest on the whole sum for six months at the rate of six per cent. per annum, such excess I will pay to you as in part consideration for said ore. Should there be no excess the consideration to stand at $14,500. The signing hereof is to be in no manner construed as evidencing an interest, right, or title to any extent in you, in said ore, absolute title being in myself by said purchase.          Price McKinney, by C. W. Marsh."

The authority of Marsh, who signed this instrument for McKinney, is not questioned. On the 7th day of the same month McKinney sold the ore to the Briar Hill Iron & Coal Company for $2.50 per ton to be delivered on docks at Lake Erie ports, and paid for in 12 equal monthly installments, beginning May 25, 1895, and at the same time sold for the Sunday Lake Iron Mining Company, of which he was the secretary, about the same quantity of iron ore to the same purchaser to be delivered at the same ports at $3 per ton, to be paid in like manner. It is claimed by the plaintiff that these two sales were in fact related transactions, that the cost of shipping the ore to its destination would be the same in either case, and that of the two the plaintiff's ore was of the better quality. Evidence was produced at the trial tending to support these claims. Of this and of all other disputed questions of fact we observe once for all that we express no opinion as to how such questions should be resolved upon the evidence. We are concerned only with the rulings of the Circuit Court upon questions of law.

It is proper to observe, however, that, because the court took the case from the jury, the plaintiff is entitled to the inferences most favorable to it, which the jury might in good faith draw from the evidence; and in our consideration of the case we must suppose the facts to be such as the jury might have found them to be. Of course the construction of the contract was the province of the court. And it seems to have been construed as leaving all that was to be done by McKinney as committed to his discretion, for the court tested the question of his liability as one of good faith, and, because it was of opinion that there was no evidence of bad faith on the part of McKinney, instructed the jury to return a verdict in favor of the plaintiff for only the amount of the excess of the amount he had realized beyond the sum he was to obtain under the contract. But the discretion of McKinney was not unlimited. Taking the circumstances into view, it seems apparent that he was not to sell the ore until it was shipped to Lake Erie ports. This could not be done until the season for navigation opened, and a time would have arrived when the market

price would be established, and the Millie Iron Mining Company would get the benefit of it. There was evidence tending to show that the ore was sold at too low a price, even if McKinney had the right to sell it at that time, and that he made the sale of this ore at a low price as a means to help to get a good one for the ore in which he was interested. Reiterating what we have said about the province of the court, we think that all these questions should have been submitted to the jury, and hence that the court erred in directing the verdict.

The judgment must be reversed, and a new trial awarded.